Doctrine 2-17-09-05 Welles Fargo Bank N.A. v. Zapalik Quorum of the members of the Department of Mortgage Quorum of the members of the World Savings Bank F.S.B. Prentiss & Abilene v. Josephine Valachia Zapalik Scott Zapalik, also known as Scott A. Zapalik Unknown owners and non-recorded claimants Defendant Dependents On behalf of the Defendant Dependents, Mr. Terry D. Slaw On behalf of the Dependents of Abilene, Mr. Michael Dowd Counsel, is there a matter that you'd like to come before the court? Yes. Would you come up to the mic, please? Thank you, Your Honor. I'm not sure what the protocol or the rules call for, but I'm in this situation. I did advise Mr. Downey, while we were waiting for our case to be called this afternoon, that Justice Zinoff's brother, Alan, and I go back 40 years. I call him a mentor. Whatever I know about lawyering, I know a lot of it from Alan. And I also represented his family in a real estate transaction, him and his wife. So I felt that I had an ethical duty to disclose that to counsel and to the panel. I'm not here seeking delay, but I believe that that is the right thing to disclose. That's just my feeling. Mr. Downey, do you have anything you want to say? No, Your Honor. I think we defer to Justice Zinoff's discretion in the matter. So we won't have any motion if you have no objection. Thank you. Thank you, counsel, for being candid with the court. I will indicate when I reviewed the briefs, I apologize, I did not recognize your name at all. I don't believe we've ever met. So I believe I can be fair and impartial in this case. Certainly, I did not know all of my brother's friends and did not know who handled the real estate transaction, although certainly was aware that they had one before they moved to California. Yes, I represented him on the sale of the condo in Chicago. All right. There are no particular provisions or specific provisions for recusal in or a motion to recuse in the appellate court. The issue is up to the court and the circumstances that present. Justice Zinoff has spoken her position, and we could take a moment if she would like us, the three of us, to talk outside of presence. Otherwise, we can go forward. I think we can go forward. All right. Thank you. All right. Now, Mr. Slaw, if you want to come forward with your notes and otherwise, you can proceed. Well, one last thing I will say for purposes of the record. There is a provision, if Justice Zinoff did not feel comfortable, where we would go ahead anyway because this is being recorded, and we have done that on other occasions where we have allowed the third panel member to listen and then converse with us. So it would not cause a delay, and we did not perceive that would be any issue here. Thank you. And again, I just appreciate the courtesy, and I want to extend the same to counsel in the court. May it please the court and counsel, we are here today on an appeal of the decision of the Circuit Court of the Eighteenth Judicial Circuit of DuPage County on February the 10th of year 2015, where by a motion for summary judgment, the trial court granted Plaintiff's motion, and currently appealee in this cause, motion for summary judgment regarding my client's now former residence in the village of Itasca County in DuPage State of Illinois. Certainly, the Code of Civil Procedure, Section 2-1005, says the moving parties entitled to summary judgment as a matter of law, pleadings, deposition, and affidavits reveal no genuine material issue of fact. In analyzing the record in totality, and this case was a very interesting, I would call it a very interesting case at the trial court level, in that Judge Gibson, initially on December the 9th of 2014, heard the motions for summary judgment, and there was argument. At that point, for lack of a better adjective, I would say it's either curiosity or counsel, both for the plaintiff and the defendant, submit a sur response. The court opined on December 9th that the plaintiff's side said there is no, and I'm paraphrasing, no loan modification, yet there's one attached to the affidavit, and that would be the affidavit of Ms. Salinas, and that's part of the record, and it's part of the motion, that in that instance, then the defendant said that they weren't sure whether there was a loan modification or whether it went in, or even became in effect. The court then made comment, maybe it was rescinded. At that point, it's my argument that since the motion for summary judgment is based on the affidavit, and the affidavit included this loan modification, which was not part of the mortgage, which was dated August of 2006, or the second mortgage, which was approximately a year later, so there were two mortgages, but the loan modification was not part of it. So the affidavit, which the trial court relied on, in its motion for summary judgment, the calculations it set forth in the Salinas affidavit could not be, in my opinion, could not be accurate, because number one, it wasn't based on the two mortgages that were set forth in the original complaint, which is like the road map to the lawsuit. Well, but as time goes on, and this litigation didn't happen overnight, there were no payments being made, correct? Again, there's some, in my opinion, a material issue of fact. Are there mortgage payments being made? There was one payment in April of 2010. The complaint stated that the default was in February of 2009. The case was filed in August of 2010. So then the issue is raised in the Salinas affidavit, this loan modification, which was dated March the 17th of 2008. Nowhere in the complaint. It first came up in the affidavit for approval for motion for summary judgment. So the complaint was answered, there was discovery issued, and then all of a sudden, now it becomes an issue, I apologize, the affidavit with this loan modification of March 17th, that's not part of the lawsuit. That's not part of the litigation, comes into play March the 17th of 2008. Why the modification is not named or listed or pled in the August lawsuit, I don't know, but it's not. And I would believe that Jeff, I'm sorry. Well, how is that, I mean, how does that, are you, I'm confused. Are you alleging that the modification wasn't properly in the lawsuit or the amount that's noted for purposes of prove up is not correct? I think it's both. Here's why, Your Honor. Well, were they entitled to a loan modification under the terms of their mortgage? They applied for one, and the bank, and there was even had a negotiations regarding the loan modification. So I would say that if the business, the bank offered them one, took money, then they were entitled to one. But did they ever come to an accord on the loan modification? There was the one payment made. And it's clearly, and clearly part of the affidavit from Ms. Salinas, which is, if the statutory reason for entering a judgment for foreclosure is an alleged or purported failure to pay the taxes, in this case, there's issues of insurance, issues of the mortgage. So if the affidavit signed by Ms. Salinas, the purported keeper of the books and records for the bank at that time, puts in this loan modification March 17th of 2008, that's how she based her calculations. So if the court is going to enter a summary judgment, the trial court's going to enter, there has to be no issue of fact. But if the complaint is the roadmap for the litigation and the calculating device, which I'll call the loan modification, isn't even part of the lawsuit, so Ms. Salinas' affidavit, there's a question of fact, whether it's accurate, what are the calculations based on. There's an issue, one of the first mortgage was $272,000, the second mortgage was $35,000, but there's an allegation in the affidavit that the principal was $293,000. It doesn't match up. Well, do you dispute or do your clients dispute that this might be considered a negative amortization where the payment, because apparently this is an adjustable rate, so if their payment, their scheduled payment does not meet the interest applicable at that time, that gets added back in. And this is a pretty significant number in terms of interest. An adjustable rate mortgage speaks for itself that the interest may go up. The principal should stay the same. And clearly, then it goes beyond the whole issue of summary judgment. I believe it's our position, and I believe, and I'll point to the justices here this afternoon, that the trial judge's decision on February 10th of 2015, after reading the SIR responses, he just goes, I believe that there is no genuine issue of fact. No real explanation, no analysis. So there isn't an intense analysis how the Salinas affidavit came up with these figures. So, based on the fact that the loan modification is what appears to be what the Salinas used to create, driving the bus to come with the bottom line figures, in addition to the issue of the insurance, there's factual disputes here. And your written answer to the motion for summary judgment identifies these specific issues. Yes. So my opinion is, is that, and in the SIR motion, we, it was addressed, the SIR motion that was filed by my office, I'll get to the exact date. It was filed, I believe, on January 6th of 2015. And we raised the issue of the loan modification not being but in the original complaint, but in the, maybe I'm looking at it too simplistically, in that if foreclosure is a creation of statute in the analysis of granting a judgment for foreclosure is a figure, some that was outstanding due to the alleged breach of the note in the contract, which is secured by the mortgage, if there's an issue of that regarding the affidavit, then the court should deny the motion for summary judgment and set it down for trial. That's all what we were asking, is, am I, due process. Here it is. These are not the figures. You calculate your figures. Your affidavit is calculated on an affidavit, an affidavit that contains a loan instrument that isn't part of the lawsuit. Judge Gibson back on December 9th of 2014 realizes that. Go write a cert, because he said in his, in the December 9th transcript that there's issues that are now coming out. That's why he requested the cert reply. And in our response, we, the loan modification, not in the lawsuit, so it could be defended. It had different terms. And therefore, based on the court's own inquiry, back on December 9th of 2014, it said, hey, you know, okay, counsels, please write this cert reply. I think the court, it's our position, I'm opining to the court, that I believe at that point, the court has concerns of some genuine issue of fact. But requested some information from counsel, from the parties. Right. Received that information and ultimately made a decision. Yes. So how, if there is a decision based upon the information subsequently tendered, plus the information that was already before it in the motion for summary judgment and advance, and your answer, shouldn't we assume that the trial court reviewed those documents and found there was no issue of material fact? That his question had been answered? I disagree. And here's why. Is that the argument, if the court, the plain view of the affidavit with the loan modification, which was not part of the initial complaint, and this was raised, argued by my office back on February the 10th of 2015, I believe that the court, it's our position the court should have at that point, ordered plaintiff to file an amendment complaint to put in the proper loan document, that being the March 17th, to add that. But that wasn't the matter that was up before the court. But then at that point, at that point, then there was a genuine issue of fact, because is the terms of the August of 26 mortgage what's driving the affidavit? Is it the terms of the second mortgage driving the affidavit? Or is it the unpled March 17, 2008 loan modification, that which is driving the affidavit? In my opinion, and I'm asking the court, is that it's a factual issue. And that by using the remedy of a motion for summary judgment, I just don't believe that it was correct at that time. That there should have been a trial with evidence, an evidentiary hearing with testimony and documents. The affidavit just creates confusion. Are there any other issues of material fact that you believe are outstanding? The issue of the insurance, where the part of Ms. Salinas' affidavit stated that there was a $5,000, in some change, discrepancy in the insurance. And my client is, I think, in an exhibit attached to the SIR affidavit. I think it was exhibit E, showing that they had been making payments on the insurance. Well, sure, they didn't have an invoice for just one year, a 12-month period, correct? Okay, yes. Which leads to question then, which I suppose could become then another question fact. But what about all the other time periods? That invoice was just for one year. But if it creates some question, it's a question. It's not undisputed. Whether it's $1 or $10, it's a question. The appellee, well, it has to be a substantial question.  Okay, I apologize to the court. I didn't mean to be smug. In the information, the Salinas affidavit, it cites one, June 22nd, 2009, and that would be for a year, because these are all year policies, November 27th, 2012, September 5th, 2013, giving credit for July 8th of 2011 to July 8th of 2012. So that's what's alleged in the affidavit. Are you saying those amounts are not accurate because your clients had paid for those periods? Yes, that's what we're saying. It was supported by their affidavit in the SIR response, which went unrebutted, that they filed, they, meaning my clients, filed affidavits which are attached to the SIR response. I think it exhibits B and C area, and that went unrebutted by plaintiff at the time. So from the time that mortgage went into effect until the time there was a final foreclosure, they had paid each year. They had paid hazard insurance for each year. I can't make that representation, but I don't believe it's relevant, and here's why. Because if it creates some issue as to what was paid and what was owed, then the affidavit can't be taken as its face without a dispute of fact. So if the standard is no genuine issue of fact, dispute, then if they paid all of it or 99% of it, it's still a factual dispute, and that's our position, Your Honor. Are there any other specific issues of material fact that you feel are outstanding? We feel that, again, there were issues of, during this pendency of this case, that Wells Fargo is well documented, involved with other litigations across the country, that we believe that my clients were, in essence, just a part of a big nationwide problem with this company that shows a pattern that their business practices weren't necessarily correct, and that's all been alleged. We feel that... Alleged by you, your clients? In my client, in the motions to reconsider, that is part of the court record, that was filed pro se by the Zappolix. At that time, the common law record would reflect that my office handled this through the motion for summary judgment, then the Zappolix handled a pro se motion to reconsider, handing themselves pro se. So we feel that, and it's an ongoing problem that the court wants to take judicial notice about settlements with Wells Fargo, federal lawsuits. We can't assume that because, I don't believe we can, that Wells Fargo has made some significant mistakes in the past and made one here. That's not before us. But I do believe the relevance here is it establishes a scenario where, based on this affidavit that is driven by a loan document that isn't even part of the initial pleading, and in reading the transcripts, I believe counsel's name for plaintiff at the time, it was a different firm, Ms. Halsey goes, well, we just got this file and they weren't aware of it. So perhaps plaintiff's lawyer didn't even have the proper documents from their client. And she acknowledged, I'm sorry, counsel for plaintiff acknowledged both on the December 9th, when Judge Gibson goes, do you want to have any comments? And she goes, no, we'll stand at the briefs. And then we just got this file. And then she also made that, Ms. Halsey also made that comment again back on February 10th when Judge Gibson ruled after reviewing the cert. So it shows that perhaps their trial level counsel never received these documents. So the relevance of the national reputation of Los Fargos goes and supports even their own counsel saying, well, we just, there was inference that they didn't even receive those. That the first time apparently that they saw the loan modification of March 17th, 2008 is when they prepared the motion for summary judgment. Have you alleged that Wells Fargo, or did they allege in any of their pro se pleadings that Wells Fargo opened an account on their behalf without their knowledge or consent? Because that's the biggest one out there. I'm not sure. There are allegations of loans without proper signatures, which I believe is, I believe it's true that it's not good. So, I mean, there are allegations of fraud raised by the Zappalinks in their motion to reconsider. The common law transcript was over 1,200 pages. A lot of it, there are letters from the Zappalinks that were attached, from Mrs. Zappalink that were attached to the cert response, which explained this was in April of 2010 now about another attempt to remodify. And there was a check tendered to them for $178 because of a class action lawsuit, so which was never cashed. But it shows an ongoing history by this company of not very straightforward business practices. And I think that that's part of the problem here. For whatever reason, it's unclear at the motion for summary judgment level, what loan document is the litigation based upon? Therefore, since that's not clear, and I'm sorry if I'm repeating myself, but that's not clear, it creates a genuine issue of fact which should have been determined by the court after an evidentiary trial. All right. We'll consider that your summary of your argument thus far and Mr. Downey's opportunity and you will have an opportunity for reply. Thank you. Thank you. Good afternoon, your honors, and may it please the court. I'm Michael Downey on behalf of Wells Fargo. This court should affirm the circuit court's decision of summary judgment below because their record does not contain any genuine issue of a substantial material fact in this case. And it shows that Wells Fargo was entitled to summary judgment as a matter of law. The borrowers have never disputed the central issue in this case, which is that they defaulted on their mortgage agreement. They admitted in their response to summary judgment below that they had not made a payment since March of 2009, almost 10 years ago. And that the loan was originated in about 2006? August of 2006, I believe. I have the exact date in the record. But so there's certainly no evidence in the record that they made any payments during that time. What the record does contain is evidence showing the specific amounts overdue and the affidavit of Yvette Salinas, Vice President of Loan Documentation, who personally reviewed the loan file in this case to calculate the amounts. And the record also contains copies of the underlying business records themselves, including the full payment history for the loans. And the actual determination of how much is owed is done by this, what, MSP, this platform that they use? And then what she essentially did was then take that figure and look at the documents to confirm that. Is that how she does it? Or is that what's alleged in the affidavit? So what's alleged in the affidavit is that she reviewed the business records that are stored in the program called MSP, which, as she testified, is the standard industry program. Those records were created in the regular course of business at or during the time that the payments or other events were made. So based on her review of those admissible records and her expertise in interpreting when it says a payment was made or was not, she summarized that information in her affidavit saying that based on these records, she has knowledge that this account is overdue by these amounts. So she testified to the amounts overdue when the default was the other fees that had accrued, things like insurance payments, the hazard insurance issue that my friends pointed out. She summarized all that based on her review of those records. Now, the borrowers never disputed below any of the facts that were stated in the affidavit, much less introduced evidence to dispute them. And so based on that alone, the circuit court did not err in correcting summary judgment. They did. I think one of the parties, though, did file a counter affidavit, correct? In the SIR response to summary judgment, they did file an affidavit, though that didn't facts in the other affidavit. It said, for instance, that they have no idea how the total amount was calculated, but that's, they aren't the loan officer who was reviewing the file with the expertise to interpret how MSP works. So did the trial court judge in any way respond to that? The affidavit says $415,000 in some change, and I'm going to round it off because I can't remember whether initial loan was $282,000 or $92,000, someplace between $72,000 and $92,000. Again, I cannot remember the exact. Was there any comments from the trial judge on that issue? I don't believe they went into detail on how the calculations were made. But what the affidavit shows is that when payments are made for such a long period of time, of course, the interest accumulates to the principal. That's the term in virtual landing mortgage and was the case here. Additionally, that causes things like late fees, hazard insurance disbursements, and other payments to go up. So the reason for this large disparity, which you see between the original principal and the principal at the time of summary judgment, is there was such a long period of time where there weren't payments or hazard insurance disbursements being made. And when was the actual decision, well, when was the motion for summary judgment filed? Because that's when the affidavit would have been filed. I believe it was in October of 2014. But I would have to review the record. I apologize. I don't have that off the top of my head. So instead of attacking below what the borrowers did do, instead of attacking the particular facts in the affidavit or business records, they attacked their admissibility, stating that for one reason or another, they were not admissible. But under the controlling Illinois rules, they clearly met the standards for admissibility, which I'd like to go over very briefly. I know that wasn't a part of the argument before. But in short, the affidavit testified that she had personal knowledge of the information in her affidavit based on her review of the records. It included specific facts, such as the amounts due and owing. And these facts were not legal conclusions, but something that could be proven based on records. She hatched the business records themselves, and she stated that she'd be able to testify to all of this information if called to do so at trial. In point of fact, none of those statements were ever specifically disputed, and she was never called on to offer a deposition testimony or elicit any of these additional facts. So based on that, that clearly meets the standards for Rule 191. Now, my friend suggests in his briefing that this affidavit was based on hearsay rather than personal knowledge. But that is belied by the documents themselves, where she states that this is based on her personal knowledge, and borrowers nowhere have disputed any of the factual allegations in the affidavit, nor do they offer any evidence that she might not have personal knowledge of that. Well, I think wouldn't you consider we don't know how or I don't know how this $415,000 figure has been assessed a dispute about the figure? No, Your Honor. I think the reason is that the affidavit lays out how the $400,000, I apologize, I don't have the exact number either, was calculated based on its breakdown. So simply responding in an affidavit, I'm not sure how all these numbers were calculated to the penny, isn't enough to create a genuine dispute effect. That would require something like a document that shows I did make a payment on this date, whereas the business records don't show that it's there. But there's nothing like that. The closest... Mr. Squaw seems to say that there was a payment, at least one payment made on this loan modification. Right. So as to that issue, first I point out that nothing about the loan modification was briefed on this appeal. So I believe that that issue is waived. And I respectfully request that if the court chooses to look at that issue, that we be given an opportunity to respond briefly in writing with a letter or something. But the loan modification was not raised on appeal. Below, I believe that what the record shows, based on... And again, since I didn't brief this issue, I would have to look at it again. There was an application for a loan modification in the file, but I don't believe there was ever any evidence that that loan modification was finalized or actually promised. So as a result, there is nothing... What happened here, as you said before, is that at the hearing on summary judgment, this issue of was there a loan modification and what about the hazard insurance came out. And out of an abundance of caution, the circuit court decided to give the parties an opportunity to brief again to see if there's evidence that there was some loan modification that was missed. Either in the counter affidavit or the supplemental briefing, was the original affidavit of Ms. Salinas, was it ever contradicted? None of the facts in that affidavit were contradicted. The closest is the statement that, you know, I don't know how this figure was calculated, but... Lack of knowledge isn't necessarily a contradiction. It's just saying I don't know. I agree with that, Your Honor. So that's the closest thing to an actual dispute that you see in the record. So the allegations of fact contained in the affidavit stand. That's correct, Your Honor. And have never been contradicted. That's correct, Your Honor. Okay, thank you. So I would go on to say... Let me turn for a moment to the issue of the hazard insurance that they raised, if that's all right. My friend has suggested that there was some evidence in the record or a disputed issue of fact around hazard insurance payments, but that's not the case for at least two reasons. First, there is no dispute that Wells Fargo had the contractual right to charge borrowers for hazard insurance for any period in which they weren't purchasing their own insurance, which had to meet the standards spelled out in the agreement, which you'll see in the record on page C-36, for extended coverage. The borrowers never put any insurance agreement or policy into the record at all, much less one that would state that it would meet the requirements for extended coverage. Nor did their counter affidavit say anything about what the coverage was. Did they attach to their certify an invoice that they had either been billed or paid? Yes, Your Honor. They attached one invoice, as you point out, for one year during July 8th, 2011 to July 8th, 2012, a period during which there's no dispute that Wells Fargo didn't charge them for hazard insurance payments. And there's nothing else in the record on summary judgment that shows any payments or any hazard insurance that may have been placed on the property for any other time. So there's simply nothing in the record that shows that there was a dispute about this other hazard insurance. In their affidavits, what they stated was that they had hazard insurance during dependency of the action, but read in conjunction with the only document that they attached to it, this one year of bill, that simply doesn't create an issue of fact of whether they had evidence of insurance during other periods in which there's a dispute. Finally, I'd like to point out on that issue, this only goes to the $5,522 hazard insurance payment. It is a very, relatively speaking, small portion of the deficiency judgment. So though we submit that this court should affirm the judgment below in all respects, if there was any remand on an issue like this, I think the most equitable course of action would be to limit that just to the issue of was there this hazard insurance payment, because it would be much more expensive to try to unwind everything else. And the borrower, since they're contractually liable for the costs involved in the foreclosure sale, if that had to be somehow unwound and done again, it would ultimately eat up the $5,522, even if they won on that issue. So we'd just like to emphasize that that, while there isn't an issue there, any remand should be limited. I'd also like to speak briefly, if I have a few moments, about the Illinois High Risk Home Loan Act, which they have called, which my friend has asked this court to reverse due to an alleged failure to verify the borrower's income. But this argument just is not in reversal for at least three reasons. First, they forfeited this argument by not raising it as an affirmative defense, and that their failure to raise an argument that contract is void as an affirmative defense is a waiver of that argument. Second, the act simply does not apply to their loan. It only applies to, quote, high risk home loans, which is a defined term in the statute. And does it, just my curiosity, does it have to be high risk at the time it's promulgated or the contract is made, or is there a time period during which it could become high risk? It's on the date of origination, Your Honor. That's present. Now, my friend pointed out in his reply brief that there was a different version of the statute, in effect, at the time the loan was originated in 2006, which has a slightly different definition for high risk home loans. But like the current version, that also leads to what the interest rate was on the date of origination, and then asks if that is at least six points higher than some national baseline, then it qualifies. So the key changes in the act was what is the national baseline that it is compared to, and regardless of which baseline you look at, the interest rate here was undisputably lower than that threshold at the date of origination. In other words, my friend argues that the interest rate later went up. That is irrelevant for the purposes of the statute because it only looks to what the date was on the date of origination. That also makes sense because the issue they're raising is whether their income was verified before the origination date, and whether that was a requirement can't be made contingent on events that may or may not happen sometime after the origination date. Was that issue relevant not only to the statute you talked about, but what about the Illinois Residential Mortgage Act of 1987? Was there a requirement under that statute that the bank, Wells Fargo, verify the income? I don't believe that that issue was briefed on appeal, Your Honor, so I'm not familiar with that. If you would like, though, I'd be happy to make a note and respond to that question. Was it raised in the trial court? I do not believe so, but again, it wasn't briefed on the appeal, so I don't want to make a representation about the statute before I'm familiar with it. But if you would you permit us to respond by letter to that issue? We'll let you know. Make a decision. Okay. Thank you very much. I apologize for not knowing that off the top of my head. A brief point on negative amortization. The issue that was raised is the negative amortization provision of the Illinois High Risk Home Loan Act. That provision does not say any negative amortizing loan is a high-risk home loan. It says that some high-risk home loans, if they're negative amortizing, hear extra requirements. So because the loan doesn't qualify as a high-risk home loan, the provision simply isn't relevant. I'd also point out that this is not necessarily a negative amortizing loan. That only applies, in any case, if the regular payments that are set out in the agreement would not be enough to cover the interest, in which case that would mean making your monthly payment, you're still losing on the interest. That's not the case here. Though the interest rate could change, it's not necessarily there. I know my time has expired. Would you permit me to speak very briefly about the pro se motion? Yes. So first, there was an issue raised about these other factual allegations about alleged misconduct by Wells Fargo in other situations. Your comment was absolutely correct that, you know, allegations about what Wells Fargo may have done in other cases are not relevant here if there's no evidence in the record that there was some kind of misconduct here, and there was not. But moreover, this issue was only raised in the pro se motion for reconsideration. And that, first of all, that issue that the ruling denying that motion was not named in the notice of appeal. And the Illinois law is clear, as the Illinois Supreme Court stated in People v. Smith, a case we cited on page 30 of our brief, that if a notice of appeal specifies particular judgments, that the appellate court does not have jurisdiction to review other judgments that were not named in that appeal. Here, the notice of appeal only mentioned the February 10, 2015 summary judgment order and makes no mention of the pro se reconsideration. So we would respectfully submit that this court does not have jurisdiction to review that. But even if it did, we'd say that this court should still affirm because the circuit court was well within its discretion to deny that pro se motion for reconsideration. The only piece of newly discovered evidence that my friend has pointed to related to that motion was a letter from January 20, 2016, that purportedly said something about whether their income had been verified. So that particular letter- In fact, it says something to the effect it didn't have to be. Precisely, Your Honor. So I was going to say that what it says is correctly that this loan did not require that income verification, but it also went on to point out that the borrowers themselves had verified their income at the time of closing. So it is not any sort of admission that there was a failure to verify income. Even if it was, that still wouldn't be relevant to summary judgment because the income verification requirement stems from the Illinois High Risk Home Loan Act, which does not apply in this case. I'd also point out that this letter, in any event, was not pointed out to the circuit court judge in the actual motion for reconsideration. It was buried in a 500-page stack of all kinds of documents and news clippings. And without pointing something like that out specifically to the circuit court, I think this court's law is clear. The circuit courts are not obligated to dig through those pages on a motion for reconsideration to hunt for something like that. Does it qualify as newly discovered evidence? I do not believe so, Your Honor. I think it's – well, first, as we've said, it's not – we don't believe that it's relevant evidence in the case at all because it doesn't say anything about any material fact, because the income verification, in any event, is not an issue in this case because the act doesn't apply and it wasn't raised as an affirmative defense. And even if it was, this letter doesn't actually say anything about whether the income was actually verified. So you'd just say it's not evidence of anything at all. Was it newly discovered? It was created after summary judgment was entered. So if you're just looking – if you're just asking for when the document was found, it is after the fact, yes. And finally, very briefly, that motion also requested leave to – sought leave to file counterclaims. Again, we respectfully submit that this court does not have jurisdiction over the order denying a pro se motion. But even if it did, the fact that leave to file counterclaims was sought four years versus six years after the case was filed, more than a year and a half after judgment was entered, is by itself enough to give – for the circuit court to have denied that motion. And there's nothing in the record that says it was an abuse of its discretion not to. And the bar was never actually submitted the counterclaims that they were going to file. So unless your honors have any other questions about this issue. Thank you. Thank you very much. Mr. Slott. If the court has no other questions. Very briefly in reply, regarding the fact that the answer may have set forth that the payments were not made, but that's not what this is about. Because it's a loan document with certain interest rates, charges, insurance charges, late fees, it has to be – there has to be an element of certainty here. It has to be without dispute. Therefore, again, and based upon my prior argument before this court, there's substantial issues of material fact in dispute as to the calculation of damages, which is driven by Ms. Salinas' affidavit. I'm looking at a copy of the affidavit which you have in your short appendix. And it appears to have a lot, I'm not counting them specifically, but quite a few documents talking about payments from payee, when checks were made, all seeming to go to the issue of documenting this figure of 415-168-03. It's on, I guess, page 76 in the appendix, anyway. I don't know which document you're looking at now. Yeah, I've got the affidavit which is attached to the motion for certain judgment, which was at C-127. Right. They're different numbers because in your short appendix and then in the regular record. Okay, so – We're looking at the same document. Okay. All right. So, and the interesting thing about this affidavit, it makes no comment whether it's the August of 2006 loan document that she's looking at when making the calculation, the for the 35,000 or the, which is approximately a year later, or the March 17, 2008 document. The only way it's even hooked into one of these documents, either of the three, is that there are a lot of other documents between those, including 5-1-2014, talking about late charges, disbursements, another one, escrow advance breakdown. They're all identified. They're all, they all have a name or their continued page, and it seems that, I haven't added them up, but it seems that there are numbers there that could be added to determine that figure, rather than say, well, we just don't know. Well, are they added? Well, let me ask this question. Well, where are they from? Where do they emanate from? The August of 2006 for the Georgia – Well, the dates are identified on it. I mean, I would go through it with you – Yes, I – Number by number, but I think we'll run out of time. Yes. The question is, in cases of this nature, when there is a foreclosure, and let's leave out the issue of the modification at this point. I'm asking a general question. When the affidavit for what is owed is presented, have you ever seen, or is there any authority that says that affidavit has to, on its face, say one is added to two, two is added to three, three is added to four, et cetera, et cetera? I don't believe Rule 191 says that with specificity. Okay. But here's the but. And I think it's important here, is that we've got three loan documents that are placed before the trial court. Where did the third one come from? Well, the loan modification. Oh, the second one, right. And then the two that are part of the – so when Ms. Salinas is calculating these figures, is it based on the first one, the document filed August of 2006, which was part of count one? Or is it the second document for $35,000, which was approximately a year in 2007? Or this third one? And if the affidavit is based on – at that point, if there's a calculation, if there's a calculation for a bottom line figure based on three certain loan documents, which are accruing interests on different amounts, over different periods of time, with different terms, I don't think her affidavit is correct. Well, do you have any counter-affidavit that contradicts this? We – the only affidavit was attached to the server agreement, which is in page C490.91 through C492 and 93. Those documents do speak for itself. How do they contradict it? With the insurance calculations in paragraph four of the Josephine affidavit, C490, paragraph four, and paragraph seven. In addition, and they're certain – if you look at – the court would flip over to then C491. There's more discussion regarding figures on $1,416.48. So the calculations are different, but there's nothing – so it's raised, and it's plaintiff's burden to prove damage. So, again, and this is how I look at it. If you've got three separate loan instruments with different terms and amounts that are calculating interest, the proper affidavit that wouldn't create the issue of fact would break it down. This does not. So the calculation in the Salinas affidavit, it cannot be correct, or there's at least a question of fact that should have gone to trial. All right. If we were to reverse this narrative, and as Mr. Downey has, I think, indicated, unraveled – I'm just using the general term – does that mean that your clients would then be looking at nonpayment from 2006 until – or, I'm sorry, 2009 until 2018? There was no payment, but there was additional in there. They also asked to counterclaim, which Judge Gibson denied in their motion to reconsider. And we believe, and it was opined in our brief, that we believe that that was – and I'll stand on the arguments in that brief – that that was an abuse of the trial court's discretion. They should have allowed the – the trial court, in our belief, should have allowed the Zaplecs to counterclaim. So what we would ask this Court is to reverse, remand with direction, and giving us my client's leave to file appropriate counterclaims, and to set all these clauses down for trial. But even if that were done, we're still looking at a date from the last payment of 2009 until this time now. What is this, August 2018? Correct. Because they're back holding the house. Yeah, they lost possession of the house back in – But they still own it. If we reverse, there might be some – Yes, and then it would be a matter of the plaintiffs to establish the proofs of what the arrears of any are. Based on which document. And we should be allowed to counterclaim. Thank you. Thank you. Counsel, thank you for your arguments. We will, indeed, take the matter under advisement. We're going to now stand in adjournment for